IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ANTONIE L. FORRESTER,[1] | CASE NO. 5:25-cv-710 |
| Petitioner, | DISTRICT JUDGE JAMES R. KNEPP II |
| vs. | |
| WARDEN SHELBIE SMITH, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Antonie Forrester filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Forrester is in custody at the Belmont Correctional Institution due to a journal entry of sentence in the case *State v. Forrester*, Stark County Court of Common Pleas, Case No. 2022CR1013. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss the Petition.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

---

[1]    In the case caption of his Petition, Forrester spelled his first name "Antonie." Doc. 1, at 1. But he signed his first name "Antoine." *Id*. at 46. I use the spelling Forrester provided in the case caption.

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

To supply context, the following summary of the background facts underlying Forrester's conviction are taken from two separate opinions. On appeal of Forrester's post-conviction petition, the Ohio Court of Appeals for the Fifth Appellate District summarized the events leading up to Forrester's custodial interrogation as follows:

> {¶2} The appellant was owed $10.00 by the victim and believed that the victim had received a $2,000.00 tax refund. On the morning of April 20, 2022, the appellant went to the victim's apartment with a Walther .380 pistol and his 15-year-old best friend to get his money back. The appellant and his friend kicked in the apartment door and entered the victim's home. The victim and two females were inside the apartment. The appellant demanded his money while pointing the gun at the victim's face, his finger on the trigger. The appellant then shot the victim in the face, and he and his friend fled.

> {¶3} Law enforcement officers were called to the scene, and the victim was transported to the hospital where he was pronounced dead shortly after arrival. A single shell casing was found in the apartment. One of the female witnesses stated that she could identify the two juveniles responsible; she knew one of them as "Ty," and described the other as a "light skinned black male." Officers apprehended the 15 year-old soon thereafter, and he gave a statement admitting to both his and the appellant's involvement in the shooting. The police showed a photo array to the female witness, and she identified the appellant as the individual who shot the victim.

> {¶4} The appellant was arrested by U.S. Marshals the following day while hiding in the attic of his home. A Walther .380 pistol was also located in the

attic, and testing later confirmed that it matched the shell casing found in the victim's apartment. The appellant was transported to the Canton Police Department and given his *Miranda* rights. The appellant agreed to waive his *Miranda* rights, signed a written waiver of those rights, and thereafter made incriminating statements to law enforcement officers.

*State v. Forrester*, Case No. 2024CA00045, 2024 WL 5003360, at *1 (Ohio Ct. App. Dec. 6, 2024). On direct appeal, the Ohio court of appeals summarized Forrester's police questioning as follows:

{¶2} On April 20, 2022, a shooting took place at a residence on Third Street Northwest in Canton, Ohio. Then 17-year-old Forrester was identified as a suspect and arrested the following day. He was transported to the Canton Police Department where he was questioned by Detectives Szaniszlo and Premier.

{¶3} Before questioning took place, Detective Szaniszlo provided Forrester with his *Miranda* warnings. Relevant to this appeal, the following conversation took place:

Szaniszlo: Okay. Alright, before we get started, okay, got to read you somethin', okay? Obviously here against your will. You don't want to be here, right?

Forrester: No response.

Szaniszlo: Alright. So I have to ask you some questions. I want your side of the story. Before I do that, I want you to know somethin'. It says I'm a police officer. I warn you anything you say be [sic] used in a court of law. You have the absolute right to remain silent. You have the right to the advice of a lawyer

3

... the presence of a lawyer with [you] here during questioning. If you can't afford a lawyer, one will be appointed or you free before any questions if you desire. You understand that?

Forrester: Yeah.

Szaniszlo: Okay. Like I said, I want your side of the story, okay? That's all I want. If you agree with that, I'm asking you to waive that. You know what that means?

Forrester: What?

Szaniszlo: It means I'm asking you to give that up and talk to me. You can always re-invoke if you wan ... if you don't wanna do it anymore. Okay? You understand that? Can you read and write? Read that line for me.

Forrester: I have ... I have the above Con...

Szaniszlo: Constitutional.

Forrester: Constitutional Rights read to me and I fully understand them and do...

Szaniszlo: Hereby.

Forrester: ... and hereby waive these rights.

Szaniszlo: You understand what that means?

Forrester: What?

[Detective Premier interrupts]

4

Premier: Don't sign yet. Just listen to what he's saying.

Szaniszlo: It means that I'm asking you to give up those rights for now. Okay? I'm saying that you have these rights. They're always your rights. You understand that? You're cool with that?

[Forrester nodding his head up and down]

Forrester: Yeah I'm cool.

Szaniszlo: You understand what those rights mean to you?

Forrester: A little bit.

Szaniszlo: Do you have questions for me?

Forrester: Humm. [Forrester shaking his head side to side.]

Szaniszlo: Okay. Have you had your rights read to you before?

Forrester: Huh?

Szaniszlo: Have you had your rights read to you before?

[Forrester nodding his head up and down]

{¶4} State's exhibit 1 (video of the interview) at 1:11, Defense exhibit A at 2–5, Judgment Entry, September 20, 2022 at 3–5.

{¶5} Forrester made incriminating statements and was subsequently bound over from the juvenile court and charged as an adult. The June 15, 2022 indictment charged Forrester with complicity to

5

> aggravated burglary, complicity to felonious assault, complicity to commit murder, complicity to commit aggravated robbery, aggravated murder, murder, aggravated burglary, and felonious assault, all with attendant gun specifications.

*State v. Forrester,* 2022-CA-00162, 2023 WL 5529928, at *1 (Ohio Ct. App. Aug. 28, 2023).

### Procedural background

*Trial court proceedings*

In June 2022, a Stark County Grand Jury indicted Forrester on one count of aggravated murder, in violation of Ohio Revised Code 2903.01 (count one); one count of aggravated robbery, in violation of Ohio Revised Code 2911.01(A)(1) and/or (A)(3) (count two); one count of aggravated burglary, in violation of Ohio Revised Code 2911.11(A)(1) and/or (A)(2) (count three); one count of murder, in violation of Ohio Revised Code 2903.02(B) (count four); and one count of felonious assault, in violation of Ohio Revised Code 2903.11(A)(1) and/or (A)(2) (count five). Doc. 4-1, at 7–10 (Exhibit 1).[2] All of the counts contained three-year firearm specifications. *Id.* At arraignment, Forrester, through counsel, pleaded not guilty. *Id.* at 11 (Exhibit 2).

Forrester filed a motion to suppress the use of any statements that he made during police questioning. Doc. 4-1, at 12–15 (Exhibit 3). The trial court

---

[2]     In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

held a hearing, Doc. 4-2, at 1–38, and overruled Forrester's motion, Doc. 4-1, at 17–21 (Exhibit 4).

On November 15, 2022, Forrester withdrew his not-guilty plea and entered a no-contest plea to the charges in the indictment. Doc. 4-1, at 23. At sentencing, the court merged counts two through five with count one. The court sentenced Forrester on count one to 20 years to life in prison, to run consecutive to the attendant, mandatory, three-year firearm-specification, for a total of 23 years to life in prison. *Id*. at 24–25 (Exhibit 5).

*Direct appeal*

Forrester, through new counsel, appealed to the Ohio court of appeals. Doc. 4-1, at 38 (Exhibit 6). In his brief, he raised the following assignment of error:[3]

> The trial court erred when it denied appellant's motion to suppress.

*Id*. at 41 (Exhibit 7). On August 28, 2023, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 89−97 (Exhibit 9).

On September 6, 2023, Forrester filed in the Ohio court of appeals a pro se motion for reconsideration of the August 28 opinion. Doc. 4-1, at 99 (Exhibit 10). He also filed motions to supplement the official appellate court record with his juvenile court records, *id*. at 160, 162 (Exhibits 22 & 23), which the Ohio court of appeals denied, *id*. at 164, 166 (Exhibits 24 & 25). On September 25,

---

[3] In this report and recommendation, Forrester's grounds for relief are reproduced as written.

the Ohio court of appeals denied Forrester's motion for reconsideration, explaining that Forrester's arguments had not been raised in his motion to suppress, at the hearing on the motion to suppress, or in his direct appeal. *Id.* at 106–07 (Exhibit 12).

On January 2, 2024, Forrester filed in the Ohio court of appeals a motion requesting delayed reconsideration of the court's September 25, 2023 decision denying reconsideration. Doc. 4-1, at 108 (Exhibit 13). On January 23, 2024, the Ohio court of appeals denied Forrester's motion. *Id.* at 121 (Exhibit 17). Forrester appealed to the Ohio Supreme Court the Ohio court of appeals' January 2024 decision, *id.* at 123–24 (Exhibit 18), but on April 16, 2024, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Forrester's appeal. *Id.* at 159 (Exhibit 21).

On August 4, 2025, Forrester filed in the Ohio Supreme Court a notice of appeal and a motion for leave to file a delayed appeal of the Ohio court of appeals' direct-review decision dated August 28, 2023, and that court's September 25, 2023 denial of Forrester's motion for reconsideration. *See* Doc. 12-1, at 1–3. On September 30, 2025, the Ohio Supreme Court denied Forrester's motion. *See* case no. 25-1012, *State v. Forrester*, Ohio Supreme Court Case Announcements, 2025-Ohio-4476 (Sept. 30, 2025).

*Ohio Appellate Rule 26(B) application to reopen*

On December 19, 2023, Forrester filed in the Ohio court of appeals an Ohio Appellate Rule 26(B) application to reopen his direct appeal.[4] Doc. 4-1, at 380 (Exhibit 42). In his application, Forrester alleged that his appellate counsel was ineffective for failing to raise on direct appeal the following assignments of error:

> 1. The court abused its discretion when it failed to consider and apply the correct legal standard as set forth in clearly established United States Supreme Court law, in assessing the voluntariness of a confession made by a juvenile.

> 2. Petitioner received ineffective assistance of counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

> 3. The state committed Brady violations during the suppression hearing when it failed to disclose evidence of petitioner's incompetency based on his previous diagnosed juvenile history of mental illness, intellectual disabilities, inability to read, write, and comprehend.

---

[4]    A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

4. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

5. The juvenile court abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(B) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

6. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery, or by failing to request a continuance of the hearing to obtain full discovery.

7. Petitioner received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

8. Petitioner was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

10

Doc. 4-1, at 382–88. Forrester also filed an affidavit in support. *Id*. at 390 (Exhibit 43). On December 28, 2023, the Ohio court of appeals denied Forrester's application as untimely, *id*. at 401–03, and found that Forrester "makes no mention of his untimely filing nor any showing of good cause" to overcome the delay. *Id*. at 403 (Exhibit 45).

Forrester did not appeal to the Ohio Supreme Court.

*Ohio Appellate Rule 26(B) delayed application to reopen*

On January 22, 2024, Forrester filed in the Ohio court of appeals an Ohio Appellate Rule 26(B) delayed application to reopen his direct appeal. Doc. 4-1, at (Exhibit 46). In this application, Forrester argued that he had good cause for his untimely filing—his inability to obtain his juvenile hearing transcript and his suppression hearing transcript. *Id*. at 405–07. In his delayed application, Forrester argued that appellate counsel was ineffective for failing to raise the following issues on direct appeal:

> 1. Appellant was denied the effective assistance of appellate counsel where counsel failed to provide him a copy of the suppression hearing transcript.
>
> 2. The appellant was denied the effective assistance of appellate counsel where counsel failed to order the juvenile hearing transcript and records.
>
> 3. The court abused its discretion when it failed to consider and apply the correct legal standard as set forth in clearly established United States Supreme Court law, in assessing the voluntariness of a confession made by a juvenile.
>
> 4. Petitioner received ineffective assistance of counsel during the suppression hearing where

11

counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

5. The state committed Brady violations during the suppression hearing when it failed to disclose evidence of petitioner's incompetency based on his previous diagnosed juvenile history of mental illness, intellectual disabilities, inability to read, write, and comprehend.

6. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

7. The juvenile court abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(b) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

8. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery, or by failing to request a continuance of the hearing to obtain full discovery.

> 9. Petitioner received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

> 10. Petitioner was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

Doc. 4-1, at 408–15. On February 6, 2024, the Ohio court of appeals denied Forrester's delayed application to reopen as untimely and successive. *Id*. at 432–35 (Exhibit 48).

On March 12, 2024, Forrester timely filed in the Ohio Supreme Court a notice of appeal. *Id*. at 436 (Exhibit 49). In his memorandum in support of jurisdiction, Forrester raised the following propositions of law:

> 1. Appellant was denied his equal protection and due process protections under the <u>Fourteenth Amendment to the U.S. Constitution</u> and Article I, Section § 10 of the Ohio Constitution to acccess to the court, and a fair and meaningful appellate review when the Fifth District Court of Appeals misclassified his motion for leave to file delayed App.R. 26(A) application as a second App.R. 26(B) application for reopening and failed to rule on the merits of it.

> 2. Appellant was denied his access to the court, equal protection and due process protections under the <u>Fourteenth Amendment to the U.S. Constitution</u> and Article I, Section § 10 of the Ohio Constitution

to a fair and meaningful appellate review when the Fifth District Court of Appeals failed to determine whether appellant showed good cause for his untimely filing of the App.R.26(B) application.

3. Appellant was denied the effective assistance of appellate counsel where counsel failed to argue ineffective assistance of trial counsel where counsel failed to provide him a copy of the suppression hearing transcript.

4. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue that trial counsel was ineffective for failing to order the juvenile hearing transcript and records.

5. The appellant was denied the effective assistance of appellate counsel where counsel failed raise and argue on direct appeal that the court abused its discretion when it failed to consider and apply the correct legal standar as set forth in clearly established United States Supreme Court law, in assessing the voluntariness of a confession made by a juvenile.

6. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of trial counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

7. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that the state committed Brady violations during the suppression hearing

when it failed to disclose evidence of petitioner's incompetency based on his previous diagnosed juvenile history of mental illness, intellectual disabilities, inability to read, write, and comprehend.

8. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of trial counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

9. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that the juvenile court abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(B) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

10. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery, or by failing to request a continuance of the hearing to obtain full discovery.

11. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise

and argue on direct appeal that appellant received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

12. The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

13. The lower court committed an obvious error in its application of the legal standard in assessing the voluntariness of a confession made by a juvenile defendant. Thus, the lower court's decision is contrary to, and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

Doc. 4-1, at 439–41. On May 14, 2024, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Forrester's appeal. *Id*. at 483 (Exhibit 52).

*Petition for post-conviction relief*

On October 16, 2023, Forrester filed a petition to vacate or set aside judgment of conviction and sentence and an affidavit in support. Doc. 4-1, at 167–91 (Exhibits 26 & 27). In his petition, Forrester raised the following claims:

16

1. Petitioner received ineffective assistance of counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

2. The state committed Brady violations during the suppression hearing when it failed to disclose evidence of petitioner's incompetency based on his history of mental illness and intellectual disabilities, inability to read, write, and comprehend.

3. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

4. The juvenile court abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(B) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

5. Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete

17

discovery, or by failing to request a continuance of the hearing to obtain full discovery.

6. Petitioner received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

7. Petitioner was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

8. Petitioner was denied the effective assistance of counsel during the juvenile proceedings where counsel failed to move the juvenile court during the amenability hearing to order an investigation into petitioner's history, education, mental state, family situation, and any other factor bearing on whether the child is amendable to juvenile rehabilitation, as mandated pursuant to R.C. 2152.12(B) to determine whether petitioner was amenable to rehabilitation in the juvenile system.

Doc. 4-1, at 174–88. The State filed a response in opposition, *id*. at 192 (Exhibit 28), and Forrester filed a reply, *id*. at 209 (Exhibit 29). On February 8, 2024, the trial court denied Forrester's petition because, it found, Forrester's claims could have been determined from the record and raised on direct appeal. *Id*. at 231–35 (Exhibit 30).

On April 5, 2024, Forrester filed in the Ohio court of appeals a notice of appeal and an Ohio Civil Rule 60(B) motion, explaining that his appeal was

untimely because the clerk failed to timely serve him. Doc. 4-1, at 237–38 (Exhibits 31 & 32). On April 30, the Ohio court of appeals determined that Forrester's appeal was timely. *Id.* at 256 (Exhibit 34). Forrester then filed a brief, and raised the following assignments of error:

> 1. The trial court abused its discretion and erred in issuing inadequate and erroneous findings of fact and conclusions of law that does not conform to the requirements of R.C. 2953.21(H). The findings does not specify which claims were barred by res judicata or what parts of the record were found to have established the bar and does not address the material and determinative issues presented by the petitioner.

> 2. Appellant received ineffective assistance of counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to appellant's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

> 3. The state committed Brady violations during the suppression hearing when it failed to disclose evidence of appellant's incompetency based on his history of mental illness and intellectual disabilities, inability to read, write, and comprehend.

> 4. Appellant received ineffective assistance of counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

5. The juvenile court abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(B) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

6. Appellant received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of appellant's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery, or by failing to request a continuance of the hearing to obtain full discovery.

7. Appellant received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

8. Appellant was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

9. Appellant was denied the effective assistance of counsel during the juvenile proceedings where counsel failed to move the juvenile court during the amenability hearing to order an investigation into appellant's history, education, mental state, family situation, and any other factor bearing on whether the child is amendable to juvenile rehabilitation, as

> mandated pursuant to R.C. 2152.12(B) to determine
> whether appellant was amenable to rehabilitation in
> the juvenile system.

Doc. 4-1, at 258–60 (Exhibit 35). The State filed a brief in response, *id*. at 290 (Exhibit 36), and Forrester filed a reply, *id*. at 319 (Exhibit 37). On December 6, 2024, the Ohio court of appeals overruled Forrester's assignments of error, finding that his claims were barred by the doctrine of res judicata. *Id*. at 326–39 (Exhibit 38).

On January 14, 2025, Forrester timely appealed to the Ohio Supreme Court. Doc. 4-1, at 341 (Exhibit 39). In his memorandum in support of jurisdiction, Forrester raised the same propositions of law as above, and added the following claim:

> 10. The court of appeals erred, abused its discretion,
> and denied appellant due process protection in
> affirming the lower court's dismissal of appellant's
> petition for post-conviction relief on grounds that the
> issues presented therein were barred by the doctrine
> of res judicata where appellant sets forth competent,
> relevant, and material evidence de hors the record.

Doc. 4-1, at 344–46 (Exhibit 40). On March 4, 2025, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Forrester's appeal. *Id*. at 379 (Exhibit 41).

21

*Federal habeas corpus petition*

Forrester states that on March 24, 2025, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[5] Doc. 1, at 46. He raises the following grounds for relief:

> **Ground one**: Appellant was denied his equal protection and due process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution to acccess to the court, and a fair and meaningful appellate review when the state court of appeals misclassified his motion for leave to file delayed App.R. 26(A) application as a second App.R. 26(B) application for reopening and failed to rule on the merits of it.

> **Ground two**: Appellant was denied his access to the court, equal protection and due process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution to a fair and meaningful appellate review when the Fifth District Court of Appeals failed to determine whether appellant showed good cause for his untimely filing of the App. R. 26(B) application.

> **Ground three**: Appellant was denied the effective assistance of appellate counsel where counsel failed to argue ineffective assistance of trial counsel where counsel failed to provide him a copy of the suppression hearing transcript.

> **Ground four**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue that trial counsel was ineffective for failing to order the juvenile hearing transcript and records.

---

[5]  A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

**Ground five**: The appellant was denied the effective assistance of appellate counsel where counsel failed raise and argue on direct appeal that the court abused its discretion when it failed to consider and apply the correct legal standar as set forth in clearly established United States Supreme Court law, in assessing the voluntariness of a confession made by a juvenile.

**Ground six**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of trial counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

**Ground seven**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that the state committed Brady violations during the suppression hearing when it failed to disclose evidence of petitioner's incompetency based on his previous diagnosed juvenile history of mental illness, intellectual disabilities, inability to read, write, and comprehend.

**Ground eight**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of trial counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

**Ground nine**: The appellant was denied the

effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that the juvenile court erred and abused its discretion by disregarding unrefutted evidence, engaging in an arbitrary analysis of the facts and law, and granting the state's motion to transfer appellant's case to adult court, in violation of R.C. 2152.12(B) and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground ten**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery, or by failing to request a continuance of the hearing to obtain full discovery.

**Ground eleven**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

**Ground twelve**: The appellant was denied the effective assistance of appellate counsel where counsel failed to raise and argue on direct appeal that appellant was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to object to the juvenile court's failure to apply the standard set forth in the relevant

Supreme Court precedent in Fare v. Michael C., 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.

**Ground thirteen**: The state court committed an obvious error in its application of the legal standard in assessing the voluntariness of a confession made by a juvenile defendant. Thus, the state court's decision is contrary to, and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

**Ground fourteen**: The state court committed an obvious error in its application of the legal standard in assessing the voluntariness of a confession made by a juvenile defendant. Thus, the state court's decision is contrary to, and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in Schneckloth v. Bustamante, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 {1973); and Fare v. Michael C., 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979).

**Ground fifteen**: Appellant received ineffective assistance of counsel during the suppression hearing where counsel failed to investigate, obtain, and present evidence contained in the juvenile court record relating to petitioner's incompetency due to his history of mental illness and/or his intellectual disabilities, his education, his background, and his intelligence, which could have been used to challenge the Miranda waiver and the incriminating statements as not being knowingly, intelligently, or voluntairly given.

**Ground sixteen**: The state committed Brady violations during the suppression hearing when it failed to disclose evidence of petitioner's incompetency based on his history of mental illness and intellectual disabilities, inability to read, write, and comprehend.

**Ground seventeen**: Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to request for a complete mental examination or a competency evaluation where there is evidence in the record to support such request.

**Ground eighteen**: The state juvenile court engaged in an arbitrary analysis of the facts and law in granting the state's motion to transfer petitioner's case to adult court, in violation of petitioner's 5th, 6th, 14th Amendment to the U.S. Constitution due process and equal protection under law was violated when petitioner was improperly bound over and therefore being held unconstitutionally because the transferee court thereby lacked jurisdiction the court lacked jurisdiction from a transfer from juvenile court that didn't protect under JDA statues.

**Ground nineteen**: Petitioner received ineffective assistance of counsel during the bindover proceedings where counsel failed to ensure that the state provided full discovery of petitioner's juvenile records, which includes but not limited to, all previous and current mental health diagnosis, prognosis, treatments, examinations, his juvenile adjudications, his education, and his intelligence. Thus, counsel was ineffective by failing to object to the lack of complete discovery; or by failing to request a continuance of the hearing to obtain full discovery.

**Ground twenty**: Petitioner received ineffective assistance of counsel during the bindover proceedings where during the probable cause hearing counsel failed to object to the juvenile court's finding of probable cause when the state failed to provide sufficient credible evidence of every element of the offenses.

**Ground twenty-one**: Petitioner was denied the effective assistance of counsel during the bindover probable cause hearing where counsel failed to

> object to the juvenile court's failure to apply the standard set forth in the relevant Supreme Court precedent in *Fare v. Michael C.*, 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 in determining whether the juvenile confession was valid.
>
> **Ground twenty-two**: Petitioner did not knowingly, intelligently, or voluntarily waive his Miranda rights because he was not properly advised of his right to remain silent.

Doc. 1, at 14–43. The Warden filed a Return of Writ, Doc. 4, and Forrester filed a traverse, Doc. 14.

### Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v.*

29

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for

31

instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

**Grounds one and two are not cognizable**

In ground one, Forrester argues that the Ohio court of appeals "misclassified his motion for leave to file delayed App. R. 26(A) application as a second App. R. 26(B) application for reopening and failed to rule on the merits of it." Doc. 1, at 14. In ground two, he argues that the Ohio court of appeals "failed to determine whether appellant showed good cause for his untimely filing of the App. R. 26(B) application." *Id.* at 15. The Warden argues that these

grounds are not cognizable. Doc. 4, at 29.

An Ohio Appellate Rule 26(B) application to reopen is a state collateral proceeding. *See Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005) ("Ohio's Rule 26(B) procedure is a collateral post-conviction remedy and not a direct appeal"); *see Morgan v. Eads*, 818 N.E.2d 1157, 1162 (Ohio 2004) ("[W]e continue to adhere to the position that the App.R. 26(B) process represents a collateral postconviction remedy and is not part of the original appeal."). And the Sixth Circuit "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986)); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir. 2017); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). So grounds one and two, in which Forrester challenges the Ohio court of appeals' process for ruling on his Rule 26(B) applications to reopen, are not cognizable. *See Shine-Johnson v. Warden, Belmont Corr. Inst.*, No. 2:20-cv-1873, 2023 WL 2364663, at *4 (S.D. Ohio Mar. 6, 2023) (Ohio courts' approach to evaluating Rule 26(B) applications to reopen is a state law issue not cognizable on federal habeas review).

**Grounds three through twelve are procedurally defaulted**

Grounds three through twelve are all ineffective-assistance-of-

appellate-counsel claims. Doc. 1, at 16–29. The Warden argues that these grounds are procedurally defaulted because Forrester raised these claims in his Ohio Appellate Rule 26(B) applications to reopen, which the Ohio court of appeals denied as untimely. Doc. 4, at 34.

Forrester raised grounds five through twelve in his December 2023 Rule 26(B) application to reopen. *See* Doc. 4-1, at 382–88. He again raised these claims in his January 2024 delayed Rule 26(B) application to reopen, *id*. at 409–15, and added the claims he now raises in grounds three and four, *id*. at 408–09.

The Ohio court of appeals denied as untimely Forrester's December 2023 Rule 26(B) application to reopen, Doc. 4-1, at 401–03, and denied as untimely and successive Forrester's January 2024 Rule 26(B) delayed application to reopen, *id*. at 432–35. The court explained that any Rule 26(B) application to reopen was due on November 26, 2023—90 days after the Ohio court of appeals issued its decision on direct appeal. *Id*. at 402, 424. This means that grounds three through twelve, which Forrester raised in his Rule 26(B) applications, are procedurally defaulted. *See Parker v. Bagley*, 543 F.3d 859, 861–62 (6th Cir. 2008) (claims raised in a Rule 26(B) application to reopen that the Ohio court of appeals rejected as untimely are procedurally defaulted); *Monzo v. Edwards*, 281 F.3d 568, 577–79 (6th Cir. 2002).

For cause to excuse his procedural default, Forrester argues that his appellate counsel refused to provide him with the suppression hearing

transcript "and all the evidence submitted" to the Ohio court of appeals "as the record on appeal." Doc. 14, at 10. But Ohio Appellate Rule 26(B) doesn't require the applicant to file transcripts. *See* Doc. 4-1, at 434 (Ohio court of appeals' decision rejecting Forrester's argument that his lack of hearing transcripts constituted good cause for his late application, explaining that lack of access to legal materials is not good cause to excuse an untimely application); *see* Ohio App. R. 26(B)(2)(e) (an application must contain "[a]ny parts of the record available to the applicant"); *State v. Marcum*, No. CA96-03-049, 2002 WL 42894, at *2 (Ohio Ct. App. Jan. 14, 2022) ("Nothing in the rule requires counsel to provide or make available a copy of the trial transcript to an applicant for purposes of preparing an App.R. 26(B) application.").

Forrester's lack of legal training and professed inability to read and write, Doc. 14, at 15, are also insufficient to show cause to excuse a procedural default.[6] *See Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) ("To show cause" to excuse a procedural default, a petitioner "must establish that some objective factor external to his defense impeded his ability to comply with the state's procedural rule") (citing *Murray*, 477 U.S. at 488); *see Bonilla*, 370 F.3d at 498 ("unfamiliarity with the English language is insufficient to establish cause to excuse [a] procedural default because [it is] not 'external to [a petitioner's] defense'"); *Stiltner v. Hart*, No. 5:13-cv-203, 2018 WL 9869503, at

---

[6]     Moreover, the Ohio court of appeals described the video recording of Forrester's police interview in which Forrester read out loud from the *Miranda* waiver form. *Forrester*, 2023 WL 5529928, at *1.

*8 (E.D. Ky. Oct. 18, 2018) ("illiteracy is insufficient to excuse default.") (citation omitted), *report and recommendation adopted*, 2019 WL 5386477 (E.D. Ky. Oct. 21, 2019). Moreover, the record shows that despite Forrester's alleged illiteracy, he promptly filed a pro se motion for reconsideration of the Ohio court of appeals' August 2023 decision, *see* Doc. 4-1, at 99, as well as many other pro se filings as detailed in the case history above. *See Bonilla*, 370 at 498 (noting that despite the petitioner's lack of English-language proficiency, he was able to file items in state court). Nor does Forrester's alleged mental disability, Doc. 14, at 14, serve as cause to excuse a procedural default. *See, e.g., Stiltner v. Hart*, No. 5:13-cv-203, 2019 WL 5386477, at *8 (E.D. Ky. Oct. 21, 2019) ("intellectual disability is never a factor external to the defense that excuses procedural default."). And Forrester has provided no evidence of a severe mental impairment. *See Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006) ("[W]e hold that a borderline mental impairment is not cause for excusing procedural default.") (citing cases).[7]

In sum, Forrester has not shown cause to excuse his procedural default of these claims.[8]

---

[7]    In support of his argument, Forrester cites *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). Doc. 14, at 15–16. The court in *Ata* held that a petitioner's mental incompetence may equitably toll the one-year statute of limitations for filing a federal habeas petition. 662 F.3d at 742. But Forrester is not seeking to equitably toll the statute of limitations for filing his federal habeas petition; he is seeking to show cause to overcome his procedural default.

[8]    On the third-to-last and second-to-last page of his Petition, Forrester writes that "[g]rounds 6, 7, 8, and 9" were not presented to the Ohio Supreme

Finally, Forrester hasn't shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in [a guilty plea] of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Bousley v. United States*, 523 U.S. 614, 623 (1998) (applying the *Murray v. Carrier* standard to a guilty plea). The Supreme Court underscored that "the miscarriage of justice exception ... applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Forrester argues that he was "incompetent at both the culpability and penalty phase." Doc. 14, at 11. He alleges that "psychological evidence contained in the juvenile court records supports a credible claim of actual innocence" and that he has a "history of mental health issues, ... intellectual disability issues," and issues with "his education, his background, and his intelligence." *Id*.

Forrester has not presented new reliable evidence (or any evidence) of

---

Court because of errors by the Belmont Correctional Mailroom. Doc. 1, at 44–45. But his description of the dates of these events doesn't correspond with the dates of his state-court filings and decisions, and at one point he refers to himself as "Petitioner McGee." *Id*. I assume that these two paragraphs were from another habeas petition and accidentally included in Forrester's petition. I have not therefore considered these items as potential cause to excuse the procedural default of Forrester's grounds three through twelve.

his alleged psychological problems.[9] *See Schlup*, 513 U.S. at 324 (A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Moreover, Forrester contends that as a result of his intellectual disabilities, he cannot read or write and he has "low level comprehension skills." Doc. 14, at 11. But this doesn't describe actual innocence—Forrester does not show that "it is more likely than not that no reasonable jury would have convicted him" of shooting the victim. *See Bousley*, 523 U.S. at 623.

For all of these reasons, grounds three through twelve are procedurally defaulted.

**Grounds thirteen, fourteen, and twenty-two are procedurally defaulted.**

In grounds thirteen, fourteen, and twenty-two, Forrester alleges that the trial court committed constitutional error when it determined that Forrester's confession was voluntary, Doc. 1, at 30, 32 (grounds thirteen and fourteen), and that Forrester knowingly, intelligently, or voluntarily waived his *Miranda* rights, *id.* at 43 (ground 22). The Warden argues that Forrester

---

[9]     In his traverse, Forrester references an "attached sworn affidavit" stating that he cannot read or write and has mental impairments, *e.g.* Doc. 14, at 8, but no affidavit saying so was submitted with the traverse. Even if the Court were to consider the affidavit that Forrester presented to the trial court with his post-conviction petition, Doc. 4-1, at 167–69, this self-serving affidavit is not specific or reliable evidence of precise diagnoses or degree of impairment.

procedurally defaulted these claims because he raised them to the Ohio court of appeals on direct review but failed to appeal to the Ohio Supreme Court. Doc. 4, at 35–36.

On direct appeal, Forrester challenged the trial court's ruling denying his suppression motion based on Forrester's claim that he was not properly advised of his right to remain silent and therefore did not knowingly, intelligently, or voluntarily waive his *Miranda* rights. Doc. 4-1, at 44. The Ohio court of appeals affirmed the trial court's judgment in August 2023, *id.* at 89–98, and Forrester did not at that time appeal to the Ohio Supreme Court.

On May 30, 2025, the Warden filed the Return of Writ and the state court record on the docket of this case. Doc. 4. On August 4, 2025, Forrester filed in the Ohio Supreme Court a notice of direct appeal and motion for delayed appeal. *See* Doc. 12-1, at 1, 3; *see also* Ohio Supreme Court case information, No. 2025-1012.[10] In his notice, Forrester stated that he sought to appeal the Ohio court of appeals' August 28, 2023, direct-review decision and its September 25, 2023 denial of his motion for reconsideration of it's direct-review decision. Doc. 12-1, at 3.

On September 30, 2025, the Ohio Supreme Court denied Forrester's motion for leave to file a delayed appeal. *See* case no. 25-1012, *State v. Forrester*, Ohio Supreme Court Case Announcements, 2025-Ohio-4476 (Sept.

---

[10]    *See*    https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2025/1012 (last visited 10/22/2025).

30, 2025). When it did, it enforced a procedural bar. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (when the Ohio Supreme Court denies a motion for delayed appeal, it enforces a procedural bar); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 712 (N.D. Ohio 2002) ("By its very nature, a denial of a motion for leave to file a delayed appeal is a denial solely on procedural grounds even if the court does not expressly cite the procedural bar in its denial."). So grounds thirteen, fourteen, and twenty-two are procedurally defaulted.

For cause to excuse the procedural default, Forrester argues that "prior to May 30, 2025," the date that the Warden filed the state court record in this case, "he had not received a copy of the [Ohio court of appeals'] September 25, 2023 decision denying the App.R.26(A) motion for reconsideration." Doc. 14, at 2. Forrester explains that he was "unaware of the September 25, 2023 decision denying the App.R.26 (A) motion for reconsideration until on or about December 23rd 2023 when he had his mother contact the Stark County Clerk of Court requesting a status update of the pending reconsideration motion." *Id*. at 3. Forrester states that he filed another motion for reconsideration and asked the Ohio court of appeals to send him a copy of its September 25 decision, but the Ohio court of appeals denied his motion and would not send him a copy. *Id*. Because he did not have a time-stamped copy of the September 25 decision and the Ohio Supreme Court requires a copy of the decision appealed, Forrester explains, he could not timely appeal to the Ohio Supreme Court. *Id*. (citing Ohio Supreme Court rule 7.02(D)(1) requiring a time-stamped copy of

the decision appealed).

Forrester's assertion that the Ohio court of appeals did not send him a copy of its September 2023 decision denying reconsideration is belied by the record, which shows that the Ohio court of appeals sent him a copy of this decision. *See* Doc. 4-1, at 21, 506. Forrester alternatively asserts that the prison didn't deliver the September 2023 decision to him, Doc. 14, at 3, but he does not provide evidence showing so.[11] *See Bard v. Davis*, No. 5:23-cv-202, 2024 WL 3205932, at *8 (N.D. Ohio May 8, 2024) (rejecting as cause to excuse a procedural default the petitioner's claim that he didn't timely receive the court's order due to the prison's new legal mail policy because the petitioner failed to provide supporting evidence), *report and recommendation adopted*, 2024 WL 3201108 (N.D. Ohio June 27, 2024); *cf Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007) (finding cause to excuse a procedural default when the state-court docket indicated that the decision was not sent to the petitioner and the petitioner submitted an affidavit from a prison employee stating that the petitioner received no legal mail during the relevant period).

Even if the Court were to find that Forrester established cause to excuse the procedural default of these claims, Forrester has not shown prejudice. To

---

[11] In his motion to stay, Forrester submitted an affidavit stating that he did not receive a copy of the Ohio court of appeals' September 25, 2023 decision. Doc. 12-1, at 16–26. He posits in this affidavit that the blame lies with the prison's 2022 legal mail policy, *id.*, but he has not provided any evidence beyond his own affidavit. Notably, around the same time, Forrester received other mail from the state courts, which undercuts his assertion that the prison's then-new legal mail policy prevented him from receiving court orders.

demonstrate prejudice to overcome a procedural default, Forrester must show that the trial court committed an error that "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See U.S. v. Frady*, 456 U.S. 152, 167, 170 (1982). Forrester has not done so. While Forrester references, in other contexts, his alleged mental health issues, intellectual disability, education, background, and intelligence, *see, e.g.,* Doc. 14, at 19, he has not shown that the trial court constitutionally erred when finding that Forrester validly waived his *Miranda* rights. Grounds thirteen, fourteen, and twenty-two are procedurally defaulted.

### Grounds fifteen through twenty-one are procedurally defaulted

Grounds fifteen through twenty-one are claims that Forrester raised in his state post-conviction petition. In ground fifteen, Forrester raises an ineffective-assistance-of-counsel claim for counsel's failure, prior to the suppression hearing, to obtain Forrester's juvenile court records to challenge Forrester's *Miranda* waiver. Doc. 1, at 33; Doc. 4-1, at 174. In ground sixteen, Forrester alleges that the State committed *Brady*[12] violations during the suppression hearing when it failed to disclose evidence of Forrester's alleged incompetency. Doc. 1, at 34; Doc. 4-1, at 176. In grounds seventeen, nineteen, twenty, and twenty-one, Forrester alleges that counsel was ineffective during the juvenile-court bindover proceedings by failing to: request a competency exam; object to the State's incomplete discovery; object to the court's probable

---

[12]    *See Brady v. Maryland*, 373 U.S. 83 (1963).

cause finding; and object to the court's failure to apply the relevant Supreme Court precedent in *Fare v. Michael C.*, 442 U.S. 707 (1979), when it found that Forrester's confession was valid. Doc. 1, at 36, 39, 40, 42; Doc. 4-1, at 177, 182, 185–86. And in ground eighteen, Forrester alleges that the juvenile court violated his constitutional rights when it bound him over to adult court. Doc. 1, at 37; Doc. 4-1, at 179. The Warden argues that these claims are procedurally defaulted. Doc. 4, at 40–41.

The trial court denied Forrester's post-conviction petition, finding that it was barred by the doctrine of res judicata because the claims "could have been determined from the record" and raised on direct appeal. Doc. 4-1, at 231–35. The Ohio court of appeals affirmed the trial court's res judicata ruling. *Id.* at 326–39. When it did, it applied a recognized state procedural bar. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). Res judicata is a regularly applied, state procedural rule that is an adequate and independent state ground on which to bar review of a habeas claim. *See Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001) (claims raised in a post-conviction petition that the state court denies on the basis of res judicata are procedurally defaulted) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)).

In his Traverse, Forrester argues that the state courts misapplied the res judicata bar because his claims "were supported by evidence outside the record." Doc. 14, at 18. Forrester does not identify any outside-the-record evidence that he provided in support of his claims. The record shows that he provided to the courts his own affidavit, which the courts found contained self-serving, conclusory statements. Doc. 4-1, at 235, 337; *see id*. at 167–69 (Forrester's affidavit stating, among other things, that Forrester's mother told the juvenile court during the bindover hearing that Forrester had been diagnosed with "mental illness and several intellectual disabilities," had been prescribed medication, and could not read or write). This affidavit is insufficient to overcome the res judicata bar. *Cf. Jones v. Bradshaw*, 46 F.4th 459, 487 (6th Cir. 2022) (finding that the Ohio court of appeals misapplied the res judicata procedural bar when "Jones has proven that his state post-conviction petition contained new, not-previously-available evidence"—a new expert's affidavit stating that the petitioner's mental impairment had been misdiagnosed by the trial expert—that was "intertwined with the merits of Jones's ineffective-assistance claim" sufficient to "be the 'key' that unlocks the de novo 'door' to the [procedurally barred] claim.").

Moreover, the facts that Forrester describes in his affidavit were known to him and available on direct review. *See Lundgren v. Mitchell*, 440 F.3d 754, 765–66 (6th Cir. 2006) (stating that "[t]he record *provided* on direct appeal is distinct from the record *available* to Petitioner in forming the basis for his

appeal" and finding that "[t]he record is clear that Petitioner and his counsel knew of the allegedly mitigating evidence … and could have used that knowledge as a basis for review upon direct appeal."); *Gomez v. Turner*, No. 3:20-cv-02247, 2023 WL 10147711, at *21 (N.D. Ohio Dec. 29, 2023) ("Because the facts underlying the claim were available for inclusion in the trial record and the claim thus could have been raised at trial or on direct appeal, the undersigned finds the state court of appeals did not unreasonably find the claim barred in post-conviction proceeding under the doctrine of res judicata.") *report and recommendation adopted*, 2024 WL 989008 (N.D. Ohio March 7, 2024); *Ahmed v. Houk*, No. 2:07-cv-658, 2014 WL 2709765, at *102 (S.D. Ohio June 16, 2014) (finding the petitioner's claim barred by res judicata because statistical data to support the claim challenging the racial makeup of the jury venire "was available for inclusion in the trial record" and therefore "could have been brought at trial or on direct appeal"), *report and recommendation adopted*, 2020 WL 5629622 (S.D. Ohio Sept. 21, 2020).

Forrester cites a case involving previously undiscovered evidence, Doc. 14, at 18 (citing *Post v. Bradshaw*, 621 F. 3d 406, 423 (6th Cir. 2010)), but does not identify any previously undiscovered evidence in this case that he has since discovered. All told, Forrester has not shown that the Ohio court of appeals misapplied the procedural bar to the claims in grounds fifteen through twenty-one, which all involve information that was available to Forrester on direct review.

Forrester has not shown cause or prejudice to excuse the procedural default. Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). But Forrester procedurally defaulted his ineffective assistance of appellate counsel claims, as detailed above in the discussion of grounds three through twelve. He reiterates his claim of actual innocence— mental illness and several intellectual disabilities, Doc. 14 at 18, 21—but his argument fails, also as described above.

### Conclusion

For the reasons set forth above, I recommend that Forrester's Petition be dismissed.

Dated: October 22, 2025

                          */s/ James E. Grimes Jr.*
                          James E. Grimes Jr.
                          U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).